# fIN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# RICHMOND DIVISION

**LOUIS DESALLE,**

    Plaintiff,

v.   No. 3:14-CV-834

**TITLEMAX OF VIRGINIA, INC. D/B/A/
TITLEMAX,**

    Defendant.

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL ARBITRATION AND TO STAY PROCEEDINGS

### I. INTRODUCTION

On November 23, 2013, Plaintiff Louis DeSalle ("Plaintiff" or "Mr. DeSalle") entered into a loan agreement with Defendant TitleMax of Virginia, Inc. d/b/a TitleMax ("TitleMax"). The loan agreement executed by Mr. DeSalle included a clause mandating arbitration. TitleMax thus seeks to compel this binding arbitration clause and moves to stay proceedings in this Court during the pendency of the arbitration. In support of its Motion, TitleMax states as follows:

### II. FACTUAL BACKGROUND

TitleMax offers motor vehicle title loans in accordance with the laws of Virginia. On November 23, 2013, Mr. DeSalle applied for and received a $2,000 loan at TitleMax's location at 1702 Boulevard, Colonial Heights, Virginia and executed a Motor Vehicle Title Loan and Federal Truth-in-Lending Disclosures (the "Agreement"). As collateral for this loan, Mr. DeSalle provided the title to his 2004 Chrysler Pacifica, Vehicle Identification No. VIN No. 2C8GF68424R545800. The Agreement signed by Mr. DeSalle included a clause mandating that any claims be subject to arbitration. Mr. DeSalle failed to make timely payments under the

Agreement, and his car was repossessed and sold in July 2014. The car was sold for less than the outstanding amount of the loan, and TitleMax suffered a loss on the transaction.

Contrary to the controlling provisions of the Agreement, DeSalle filed a Complaint against TitleMax in the Circuit Court for the City of Petersburg, Virginia on November 18, 2014, asserting claims under the Uniform Commercial Code ("UCC"), the Virginia Consumer Protection Act ("VCPA") and common law conversion. (Dkt. 1-1, Ex. A to Defendant's Notice of Removal, Plaintiff's Compl. at ¶¶77-104.) TitleMax removed the Complaint to this Court on December 17, 2014.

### III. ARGUMENT

The Federal Arbitration Act ("FAA"), 9 U.S.C. §1, *et seq.*, provides that "[a] written provision in … a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract … shall be valid, irrevocable and enforceable … ." 9 U.S.C. §2. "The FAA reflects 'a liberal federal policy favoring arbitration agreements.'" *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002) (citation omitted). "Accordingly, 'due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration.'" *Id.* "Like the United States, Virginia favors enforcing arbitration clauses." *March v. Tysinger Motor Co., Inc.*, 2007 WL 4358339, at *2 (E.D. Va. Dec. 12, 2007) (citing Va. Code § 8.01-581.01; *TM Delmarva Power, LLC v. NCP of Va., LLC,* 557 S.E.2d 199, 202 (Va. 2002)). "And, like the [FAA], Virginia law provides that a written arbitration agreement 'is valid, enforceable and irrevocable, except upon such grounds as exist at law or in equity for the revocation of any contract.'" *Id.* (citing Va. Code § 8.01-581.01). "Thus, under federal and Virginia law, while a court may decide whether an arbitration agreement was formed and determine its scope, the court may not

resolve any dispute that is covered by an enforceable arbitration agreement." *Id.* In light of the strong federal policy favoring arbitration, the FAA's requirements for enforcement of an arbitration provision are not onerous.

"In the Fourth Circuit, a litigant can compel arbitration under the FAA if he can demonstrate '(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute.'" *Adkins*, 303 F.3d at 500-01 (citation omitted).

### 1. There Is A Dispute Between TitleMax And DeSalle

There is a dispute between TitleMax and DeSalle, which is evidenced by the Complaint. In the Complaint, DeSalle accuses TitleMax of three things: (1) repossessing and disposing of Mr. DeSalle's car in violation of the UCC (Count I – Violation of the Uniform Commercial Code); (2) engaging in loan practices which violate the VCPA (Count II- Violation of the Virginia Consumer Protection Act); and (3) conversion of personal items which were allegedly in Mr. DeSalle's car when it was repossessed (Count III – Conversion). TitleMax denies any liability. Hence, there is a dispute between the parties.

### 2. The Parties Entered Into A Binding Arbitration Agreement

In determining the existence of an arbitration agreement, courts apply general contract law principles. *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686 (1996) (quoting *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 281 (1995)); *Am. Gen. Life & Acc. Ins. Co. v. Wood*, 429 F.3d 83, 87 (4th Cir. 2005) ("Although federal law governs the arbitrability of disputes, ordinary state-law principles resolve issues regarding the formation of contracts.");

3

*Adkins*, 303 F.3d at 501 ("Whether a party agreed to arbitrate a particular dispute is a question of state law governing contract formation.") Agreements to arbitrate may be invalidated only upon such grounds as exist at law or in equity for the revocation of any contract, such as duress, fraud and unconscionability. 9 U.S.C. §2; *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987); *Wood*, 429 F.3d at 87 ("generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2"). There are no grounds for revocation in this case.

### a. **DeSalle Signed the Agreement**

Virginia courts have consistently held that arbitration agreements between two parties are valid and enforceable. *See, e.g., TM Delmarva Power, L.L.C. v. NCP of Virginia, L.L.C.*, 557 S.E.2d 199, 202 (Va. 2002) ("the public policy of Virginia favors arbitration"). "A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable … ." Va. Code § 8.01-581.01.

Mr. DeSalle unequivocally accepted TitleMax's proffered loan and signed the Agreement, thereby agreeing to arbitrate any disputes, including the claims alleged in his Complaint. The Agreement executed by Mr. DeSalle included the following provision:

> **WAIVER OF JURY TRIAL AND ARBITRATION PROVISION.** Arbitration is a process in which persons with a dispute: (a) waive their rights to file a lawsuit and proceed in court and to have a jury trial to resolve their disputes; and (b) agree, instead, to submit their disputes to a neutral third person (an "arbitrator") for a decision. Each party to the dispute has an opportunity to present some evidence to the arbitrator. Pre-arbitration discovery may be limited. Arbitration proceedings are private and less formal than court trials. The arbitrator will issue a final and binding decision resolving the dispute, which may be enforced as a court judgment. A court rarely overturns an

arbitrator's decision. **THEREFORE, YOU ACKNOWLEDGE AND AGREE AS FOLLOWS:**

…

6. All parties, including related third parties, shall retain the right to seek adjudication in General District Court, as defined in Code of Virginia Title 16.1 Chapter 4.1, for disputes within the scope of such tribunal's jurisdiction. Any dispute, which cannot be adjudicated within the jurisdiction of a General District Court, shall be resolved by binding arbitration. Any appeal of a judgment from a General District Court shall be resolved by binding arbitration. The institution and maintenance by you or us of any action set forth in this *Paragraph 6* shall not constitute a waiver of the right to submit any dispute to arbitration, including any counterclaim asserted. Furthermore, nothing in this Arbitration Provision shall limit the right of you or us (a) to foreclose against the Motor Vehicle by the exercise of any power under the Loan Agreement or under applicable law, (b) to exercise self-help remedies such as set off or repossession, or (c) to obtain provisional or ancillary remedies such as pre-judgment seizure of property, detinue, replevin, or injunctive relief, or to seek or obtain any other traditional equitable relief which does not claim money damages from a court having jurisdiction. The institution and maintenance by you or us of any action set forth in this *Paragraph 6* shall not constitute a waiver of the right to submit any dispute to arbitration, including any counterclaim asserted.

(Ex. 1 at 2-3) (emphasis in original).[1]

The Agreement offered Mr. DeSalle the option to opt out of the mandatory arbitration agreement, as follows:

**9. OPT-OUT PROCESS.** You may choose to opt-out of this Arbitration Provision but only by following the process set-forth below. If you do not want to be subject to this Arbitration Provision, then you must notify us in writing within sixty (60) calendar days of the date of this Agreement at the following address: 15 Bull Street, Suite 200, Savannah, GA 31401. Your written notice must include your name, address, social security number, the date of this Agreement, and a statement that you wish to opt-out of the Arbitration Provision. If you choose not to opt-

---

[1] The copy of the Agreement attached as Exhibit A to Plaintiff's Complaint appears largely illegible, presumably due to the photocopying process. Attached hereto as Exhibit 1 is a more legible copy of the Agreement, including the subject arbitration clause, for the Court's review.

> out, then this Arbitration Provision will apply to all your previous transactions with us. Your decision to opt-out on subsequent transactions with us will only apply to that particular transaction and no previous transactions.

(*Id.* at 3)(emphasis in original).

Mr. DeSalle did not elect to opt out of the binding arbitration clause in the Agreement. Further, Mr. DeSalle's Complaint alleges over $100,000 in damages. Compl. at 14. Thus, the General District Court would not have jurisdiction over this dispute, triggering mandatory arbitration. Va. Code § 16.1-77(1). Further, Mr. DeSalle did not seek to invoke the jurisdiction of the General District Court, instead filing his Complaint in the Circuit Court for the City of Petersburg.

### b. The Agreement Is Supported By Consideration

DeSalle's agreement to arbitrate is supported by consideration. TitleMax's disbursement of the proceeds from the loan constitute consideration. Va. Code § 8.3A-303(b) ("Consideration" means any consideration sufficient to support a simple contract. . . . If an instrument is issued for value as stated in subsection (a), the instrument is also issued for consideration.") Further, TitleMax's mutual promise to submit covered claims it may have against DeSalle to mediation and binding arbitration also constitutes sufficient consideration. (Ex. 1, at 3, §6.) *See, e.g., O'Neil v. Hilton Head Hosp.*, 115 F.3d 272, 275 (4th Cir. 1997); *Matterhorn, Inc. v. NCR Corp.*, 763 F.2d 866, 869 (7th Cir. 1985) ("If the agreement of one party to arbitrate disputes is fully supported by the other party's agreement to do likewise, there is no need to look elsewhere in the contract for consideration for the agreement to arbitrate … .")

### c. DeSalle's Claims Are Covered By The Agreement

Once the Court finds an agreement to arbitrate, as exists here, it must consider whether the claims asserted in the litigation fall within the scope of that arbitration agreement. *Moses H.*

6

*Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983); 9 U.S.C. §4. Given the strong federal policy favoring arbitration, courts are to read arbitration clauses broadly, with "any doubts concerning the scope of arbitrable issues [being] resolved in favor of arbitration." *Moses H. Cone Hosp.*, 460 U.S. at 24-25; 9 U.S.C. §4. Motions to compel arbitration under an arbitration clause should not be denied "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 583, 80 S. Ct. 1347 (1960). Only an express provision excluding a particular claim from arbitration or "'the most forceful evidence of a purpose to exclude the claim from arbitration can prevail … .'" *Washington Square Sec., Inc. v. Aune*, 385 F.3d 432, 436 (4th Cir. 2004) (citation omitted).

The arbitration clause in the Agreement expressly covers Mr. DeSalle's claims, as follows:

> For purposes of this Waiver of Jury Trial and Arbitration Provision (hereinafter the "Arbitration Provision"), the words "dispute" and "disputes" are given the broadest possible meaning and include, without limitation (a) all claims, disputes, or controversies arising from or relating directly or indirectly to the signing of this Arbitration Provision, the validity and scope of this Arbitration Provision and any claim or attempt to set aside this Arbitration Provision; (b) all federal or state law claims, disputes or controversies, arising from or relating directly or indirectly to this Loan Agreement (including the Arbitration Provision), the information you gave us before entering into this Loan Agreement, and/or any past agreement or agreements between you and us; (c) all counterclaims, cross-claims and third-party claims; (d) all common law claims, based upon contract, tort, fraud, or other intentional torts; (e) all claims based upon a violation of any state or federal constitution, statute or regulation; (f) all claims asserted by us against you, including claims for money damages to collect any sum we claim you owe us; (g) all claims asserted by you individually against us and/or any of our employees, agents, directors, officers, shareholders, governors, managers, members,

> parent company or affiliated entities (hereinafter collectively referred to as "related third parties"), including claims for money damages and/or equitable or injunctive relief; (h) all claims asserted on your behalf by another person; (i) all claims asserted by you as a private attorney general, as a representative and member of a class of persons, or in any other representative capacity, against us and/or related third parties (hereinafter referred to as "Representative Claims"); and/or (j) all claims arising from or relating directly or indirectly to the disclosure by us or related third parties of any non-public personal information about you.

(Ex. 1 at 2.) This is a broad arbitration clause that specifically references "all federal or state law claims, disputes or controversies, arising from or relating directly or indirectly to this Loan Agreement" and " all common law claims, based upon contract, tort, fraud, or other intentional torts" – the very claims advanced by Mr. DeSalle against TitleMax.

Because Mr. DeSalle's claims fall squarely within the scope of the Agreement, they must be resolved under its terms. *See, e.g., Rota-McLarty v. Santander Consumer USA, Inc.,* 700 F.3d 690 (4th Cir. 2012) (compelling arbitration of consumer protection claims); *Klein v. Verizon Commc'ns, Inc.*, 920 F. Supp. 2d 670 (E.D. Va. 2013), *appeal dismissed (May 8, 2013)* (compelling arbitration of claims brought under Virginia's Consumer Protection Act.)

### 3. The Parties' Relationship Is Related To Interstate Commerce

Here, the parties to the Agreement are citizens of different states, rendering the Agreement related to interstate commerce. (Dkt. 1 at 1-2.)

### 4. Plaintiff Has Refused To Arbitrate His Claims

Mr. DeSalle filed his Complaint in the Circuit Court for the City of Petersburg, rather than institute an arbitration proceeding as required by the Agreement, signaling his refusal to submit his claims to arbitration.

### 5. Prior Enforcement Of The Agreement

Various courts have enforced arbitration clauses similar to that in the Agreement and have granted motions identical to TitleMax's present motion. *See, e.g, Scott v. TitleMax of S. Carolina Inc.*, No. CIV.A. 3:09-1032-CMC, 2012 WL 393365, at *3 (D.S.C. Jan. 17, 2012) *report and recommendation adopted*, 2012 WL 384802 (D.S.C. Feb. 6, 2012) (staying action pending arbitration when faced with largely identical arbitration clause); *Jones v. Titlemax of Georgia, Inc*., 2006 WL 562189, at *10 (N.D. Ga. Mar. 7, 2006) (staying action pending arbitration when faced with largely identical arbitration clause).

As is apparent from these decisions, courts have not hesitated to enforce the Agreement because it is fair and balanced, affording Mr. DeSalle the full rights and remedies available to him as an individual litigant in judicial proceedings.

## IV. CONCLUSION

"Because FAA provisions are mandatory, courts must compel arbitration when a valid arbitration agreement exists." *Hightower v. GMRI, Inc.*, 272 F.3d 239, 241 (4th Cir. 2001); 9 U.S.C. §3. The Court should enter such an order in this case.

For all of the above reasons, Defendant TitleMaxjd respectfully requests that the Court stay any further proceedings in this action and compel Plaintiff Louis DeSalle to arbitrate his claims on an individual basis under the terms of the Agreement, and for such further relief as the Court deems proper.

    Respectfully submitted,

    Defendant
    TITLEMAX OF VIRGINIA, INC.


By:   /s/ Kelly Krystyniak
       Kelly A. Krystyniak (VSB# 82310)
       Brandon H. Elledge (VSB# 45349)
       HOLLAND & KNIGHT LLP

1600 Tyson's Boulevard
Suite 700
Tyson's Corner, VA 22102
T: (703) 720 8600
F: (703) 720 8610
kelly.krystyniak@hklaw.com
brandon.elledge@hklaw.com

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that a true copy of the foregoing **DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL ARBITRATION** was served this 23rd day of December, 2014, via the Court's electronic filing system, which will serve a copy of the foregoing on counsel of record below:

> Dale W. Pittman (VSB# 15673)
> The Law Office of Dale W. Pittman, P.C.
> 112-A W. Tabb Street
> Petersburg, Virginia 23803
> T: 804.861.6000
> dale@pittmanlawoffice.com
>
> *Counsel for Plaintiff Louis DeSalle*

> /s/ Kelly Krystyniak
> Kelly A. Krystyniak (VSB# 82310)
> HOLLAND & KNIGHT LLP
> 1600 Tyson's Boulevard
> Suite 700
> Tyson's Corner, VA 22102
> T: (703) 720 8600
> F: (703) 720 8610
> kelly.krystyniak@hklaw.com